UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-23699-Civ-COOKE/TORRES

AT&T CORPORATION,

    Plaintiff,

vs.

NEXT COMMUNICATIONS, INC.,

    Defendant.
_____/

### ORDER ON MOTION FOR SUMMARY JUDGMENT

This is a dispute between two telecommunications companies, Plaintiff AT&T Corporation ("AT&T") and Defendant Next Communications, Inc. ("Next") regarding Next's alleged nonpayment of amounts due to AT&T for services rendered. I have jurisdiction under 28 U.S.C. § 1332.

Pending is AT&T's Motion for Summary Judgment. (ECF No. 39). I grant the motion.

### BACKGROUND

In September 2011 and April 2013, respectively, Next established an AT&T Voice Over IP Connect Service account (the "AVOICS Account") and an AT&T Network Connection account (the "ANC Account") under which Next received certain telecommunications services from AT&T beginning. (ECF No. 39-2 ¶ 3).

Next agreed to pay for the services AT&T provided under these Accounts according to a series of pricing attachments to a Master Carrier Agreement between AT&T and Next. (*Id.* ¶ 4 & Ex. 1). Next's CEO, Arik Meimoun, accepted the pricing attachments by handwritten and electronic signatures. (*Id.* Ex. 1). AT&T provided services to Next under the AVOICS and ANC Accounts and sent monthly invoices to Next for those services from September 2011 through August 2015. (*Id.* ¶ 5 & Ex. 2).

AT&T alleges that although Next never disputed that it owed the full amounts reflected on the invoices (*Id.* ¶ 6), it never made full payment on either Account. (*Id.*).

1

John Hanley, an AT&T sales representative, discussed this issue with Meimoun, and Next agreed to a payment plan for the full amount due to AT&T under both Accounts, as reflected on AT&T's invoices. (*Id.* Ex. 3). A November 12, 2014 email from Hanley to Meimoun reflects the terms of this payment plan, stating that Next would pay AT&T $500,000 by November 26, 2014, and an additional $1,412,374.88 split between the months December 2014, January 2015, and February 2015 ($470.791.63 each month), along with the current balance due on both the AVOICS and ANC Accounts ("the first payment plan"). (*Id.* ¶ 7 & Ex. 3).

Meimoun agreed to the terms of this payment plan in an email dated November 13, 2014, stating "This deal is approved!!!!" (*Id.* Ex. 3). AT&T did not receive the initial $500,000 payment required under the first payment plan on November 26, 2014, but eventually received it on December 9, 2014. (*Id.* ¶ 8). Next thereafter did not make any other payments under the first payment plan. (*Id.*).

In January 2015, Next notified AT&T that it could not meet the terms of the first payment plan. (*Id.* ¶ 9). Meimoun and an AT&T, representative, Jim Grier, discussed a second payment plan. (*Id.* Ex. 4). The second payment plan is set forth in email correspondence between Meimoun and Grier dated January 21, 2015. (*Id.*). Under the second payment plan, Next agreed to pay AT&T as follows: $236,172.22 plus an additional $50,000 by January 28, 2015; $1,321,374.80 to be paid in five installments of $262,474.96 to be received by AT&T by the 15th of each month starting February 15, 2015; and all current payments for future invoices would be paid in full by the 28th of each month. (*Id.* ¶ 10 & Ex. 4). Meimoun agreed to this payment plan, stating: "This is great news. . . . We are in full agreement." (*Id.* Ex. 4).

On February 2, 2015, AT&T received the first payment required under the second payment plan, $236,172.22 plus an additional $50,000. (*Id.* ¶ 11). On February 18, 2015, AT&T received the first installment of $262,474.96 for the past due balances. (*Id.*). Next made some other payments on the Accounts, including a payment of $50,000 on April 17, 2015. (*Id.*) Next did not, however, make full payment under the second payment plan, failing to make the last four installments on the past due balances. (*Id.*).

On June 3, 2015, AT&T sent two letters to Next regarding the past due amounts on the AVOICS and ANC Accounts, demanding full payment on both by June 10, 2015. (*Id.* ¶

12 & Ex. 5). The letters explained that if the "overdue status of [the Accounts] continue[s], AT&T will no longer accept orders for additional services from Next Comm effective June 11, 2015." (*Id.* Ex. 5). The letters further stated that they were "AT&T's formal notice of termination under AT&T's contract" with Next, and if it did not receive payment by June 10, 2015, "AT&T will exercise its right to disconnect [Next's] service." (*Id.*).

Next did not respond to AT&T's letters and did not pay the amounts that remained due under the AVOICS and ANC Accounts. (*Id.* ¶ 13). On or around June 17, 2015, AT&T began the disconnection process on both Accounts. (*Id.* ¶ 14). On August 28, 2015, AT&T issued final invoices to Next in the amount of $1,030,263.44, including late payment charges. (*Id.* ¶ 15 & Ex. 2; ECF Nos. 27-1, 27-2). Next did not dispute the final invoices, yet failed to make any further payments to AT&T. (ECF 39-2 ¶ 16). AT&T alleges that Next currently owes AT&T approximately $1,030,263.44, consisting of $586,498.52 due under the AVOICS Account and $443,764.92 due under the ANC Account. (*Id.* ¶ 15 & Ex. 2; ECF Nos. 27-1, 27-2).

In its defense, Next alleges that in 2011 it entered into a "Contra-Cost Agreement" with AT&T Global Wholesale under which Next agreed to pay AT&T a certain rate for calls that Next terminated to AT&T's network in the United States, and AT&T Global Wholesale agreed to pay a certain rate for calls it terminated to Next's network in other countries. (ECF No. 44 ¶ 7). Next claims that in late 2014, AT&T Global Wholesale stopped paying Next for the calls it sent to Next for termination in other countries, and that this failure to pay excused Next from paying bills under the AVOICS or ANC Accounts because Next's duty to pay was "naturally conditioned" on AT&T Global Wholesale paying Next for terminating a certain amount of calls/minutes in other countries. (*Id.* ¶¶ 9-12).

## STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## DISCUSSION

AT&T asserts three claims: (1) a claim for account stated under the AVOICS Account; (2) a claim for account stated under the ANC Account; and, in the alternative, (3) a claim for unjust enrichment. (ECF No. 27 ¶¶ 20-37).

In *In re Standard Jury Instructions – Contract and Business Cases*, 116 So. 3d 284, 331-32 (Fla. 2013), the Florida Supreme Court set forth the requirements of an account stated claim:

>(1) There must be an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance. *Merrill–Stevens Dry Dock Co. v. Corniche Exp.*, 400 So. 2d 1286, 1286 (Fla. Ct. App. 1981).
>
>(2) The action for an account stated is an action for a sum certain, and where there is no such agreement between the parties, the plaintiff may not recover upon a theory of account stated. *FDIC v. Brodie*, 602 So.2d 1358, 1361 (Fla. Ct. App. 1992); *Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am., Inc.*, 611 So.2d 564, 565 (Fla. Ct. App. 1992); *Merrill–Stevens Dry Dock*, 400 So.2d at 1286–87.
>
>(3) An account statement is not absolutely conclusive upon the parties as the presumption of the account's accuracy and correctness may be overcome by proof of fraud, mistake, or error. *Farley v. Chase Bank, U.S.A., N.A.*, 37 So.3d 936, 937 (Fla. Ct. App. 2010).
>
>(4) An agreement to a resulting balance may be established by the failure to object to the account statement. *Myrick v. St. Catherine Laboure Manor, Inc.*, 529 So.2d 369, 371 (Fla. Ct. App. 1988).
>
>(5) An objection to an account must be made within a reasonable time. *Robert C. Malt & Co. v. Kelly Tractor Co.*, 518 So.2d 991, 992 (Fla. Ct. App. 1988).
>
>(6) A copy of the account showing items, time of accrual of each, and amount of each must be attached to the Complaint Fla. R. Civ. P. 1.933 (Form).[1]

AT&T has satisfied its burden of proof as to its accounts stated claims.

This is an action for a sum certain. *See, e.g.*, *Brodie*, 602 So.2d at 1361. AT&T claims, based on its invoices, that Next owes it $1,030,263.44, consisting of $586,498.52 due under the AVOICS Account and $443,764.92 due under the ANC Account. (ECF No. 39-2 ¶ 15 & Ex. 2; ECF Nos. 27-1, 27-2). Next argues that AT&T's invoices "utterly lack the detail of the underlying charges necessary to apprise Next of what [it] is supposed to or had legal obligation to object or respond to." (ECF No. 44 ¶ 2). But "an account stated claim does not require proof of an itemized statement of charges.'" *Twins Int'l Mktg. v. Lagaci, Inc.*, 2014

---

[1] AT&T attached copies of its invoices to the Amended Complaint. (ECF Nos. 27-1, 27-2).

5

WL 4248192, at *3 (S.D. Fla.); *see Farley*, 37 So. 3d at 937 ("An itemized statement of underlying charges is not required to establish a claim for an account stated."); *Nants v. F.D.I.C.*, 864 F. Supp. 1211, 1220 (S.D. Fla. 1994) ("[I]t is not necessary to 'show the books of original entries from which the account is made up since the very object in rendering, stating, and settling accounts is to avoid the necessity of making such proof.'" (citation omitted)).

Moreover, there was "an agreement between the parties that a certain balance [was] correct and due and an express . . . promise to pay this balance. *Merrill–Stevens Dry Dock*, 400 So.2d at 1286. AT&T and Next entered an Amended and Restated Master Carrier Agreement in 2011, and later entered Service Terms and Pricing Attachments to that agreement for the provision of AVOICS and ANC Service. (ECF No. 39-2 ¶ 4 & Ex. 1). AT&T sent Next monthly invoices for the services rendered from September 2011 through August 2015. (*Id.* ¶ 5 & Ex. 2). Next does not dispute it received the requested services from AT&T. Id. ¶ 6. Next used the services AT&T provided and agreed to pay the amounts AT&T charged for those services. ( *Id.* ¶¶ 7-10 & Exs. 3, 4).

Next counters that it objected to the amounts AT&T claimed it owed, "as there were "many communications regarding AT&T's unilateral decision to stop performing under the Contra-Cost Agreement." (ECF No. 44 ¶ 2). According to Next, the Contra-Cost Agreement was a pricing "scheme envisioned and implemented by [AT&T] to inflate its revenues from minutes terminating in the United States sold to Next. Under AT&T's revenue pumping-scheme, AT&T overcharged for minutes terminating in certain countries purchased from Next." (ECF No. 44 at 13 ¶ 6). Next asserts AT&T and Next exchanged "twenty million dollars plus" under this arrangement. (*Id.* at 13 ¶ 8).

In late 2014, however, AT&T "unilaterally stopped, without adequate notice to Next . . . compensating Next at the higher agreed to rate for minutes terminating in foreign markets." (*Id.* at 13 ¶ 9). "Despite having shut down the transaction side favorable to Next, AT&T continued to sell minutes to Next at the inflated Contra-Cost Agreement price. Ultimately the inflated prices, without the corresponding proper set off for sales to Next, [are] what AT&T is attempting to collect in the summary judgment motion." (*Id.* at 13-14 ¶ 10).

6

Other than Meimoun's affidavit, Next offers no evidence to support its allegations.[2]

AT&T tells a different story. It offers Hanley's affidavit, in which he states:

> The Contra-Cost arrangement [which was in place for a period of months during 2011 and 2012] was entirely separate from and unrelated to the charges under the AVOICS and ANC accounts at issue here. First, the Contra-Cost arrangement did not involve ANC service at all. Second, the AVOICS charges and traffic covered by the Contra-Cost arrangement were entirely separate from the AVOICS charges and taffic covered by the AVOICS account at issue in this case. Simply put, during the period the Contra-Cost arrangement was in place, AT&T and Next had two separate arrangements to cover different traffic that Next sent to AT&T.

(ECF 52-1 ¶ 4).

In support of Hanley's claim that the Contra-Cost Agreement was separate from and unrelated to the AVOICS and ANC Accounts, AT&T submitted invoices from the period when the Contra-Cost Agreement was in place. (ECF No. 52-1 Ex. 1). A comparison of those invoices to the AVOICS Account invoices shows:

> (1) The AVOICS Account and the Contra-Cost Agreement had different billing numbers.
>
> (2) The AVOICS Account and the Contra-Cost Agreement had different account numbers.
>
> (3) Invoices for the AVOICS Account stated "NO CONTRA" in the address block, whereas invoices under the Contra-Cost Agreement stated "CONTRA."
>
> (4) The amounts billed to Next for the same months under the AVOICS Account were different than the amounts billed under the Contra-Cost Agreement.

---

[2] Next blames its inability to produce evidence to support its allegations on a "devastating cyber-attack by a criminal syndicate" which caused it "substantial financial harm" which, in turn, led to its eviction from its offices and the seizure of its books and records by its landlord. (ECF No. 44 at 12 ¶ 4). Whether or not that claim is true, it does not relieve Next of its burden of producing evidence on which the jury could reasonably find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the [non-moving party]").

Thus, the record evidence shows that the Contra-Cost Agreement was separate from and unrelated to the AVOICS and ANC Accounts. Next's argument that objections it may have made about the Contra-Cost Agreement also applied to the AVOICS and ANC Accounts therefore lacks merit.

In short, Next offers no evidence that it objected to charges due on the AVOICS and ANC Accounts.[3] *Myrick*, 529 So.2d at 371 (agreement to a resulting balance may be established by the failure to object to the account statement). To the contrary, the evidence shows Meimoun agreed twice, in writing, to pay the full amount that AT&T said was due under those Accounts. *Farley*, 37 So. 3d at 937 (an "account stated has been defined to be 'an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment.'" (citations omitted)). Thus, the record leaves no doubt that AT&T and Next had agreed upon a balance due.

Finally, Next has not offered any "proof of fraud, mistake, or error" that would call into question the Accounts' "accuracy and correctness." *Farley*, 37 So.3d at 937. Its allegations of fraud regarding the Contra-Cost Agreement, unsupported by evidence, do not suffice. *See Anderson*, 477 U.S. at 252.

In light of the above, AT&T has satisfied its burden of proof as to its accounts stated claims. Summary judgment is therefore warranted.[4]

---

[3] Mere bald assertions, unsupported by documents or sworn evidence, do not create a genuine issue of material fact, and Next has failed to produce a single document or sworn statement showing that it ever disputed the charges under the actual accounts at issue here. *See, e.g., Mize v. Jefferson Cnty. Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (for factual issues to be considered genuine, they must have "a real basis in the record"); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value."). Next's present objections, in response to being sued, are insufficient to defeat AT&T's claims. *Robert C. Malt,* 518 So.2d at 992 (Fla. Ct. App. 1988) (objection to an account must be made within a reasonable time).

[4] Because I find AT&T has satisfied its burden as to it accounts stated claims, I need not address its unjust enrichment claim.

## CONCLUSION

It is, therefore, **ORDERED** and **ADJUDGED** that Plaintiff's Motion for Summary Judgment (ECF No. 39) is **GRANTED**.

**DONE** and **ORDERED** in chambers at Miami, Florida, this 29th day of November 2016.

*[signature: Marcia G. Cooke]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*